McCabe, Plaintiff in Error, *vs.* Worthington, Defendant in Error.

1. During the pendency of a suit under the act of congress of May 26th, 1824, to try the validity of a claim to land, the land claimed was not reserved from entry and sale, unless the claimant had filed a notice of his claim with the recorder of land titles prior to July 1st, 1808. A person obtaining a patent for the land from the United States after the institution of the suit and before a final decree in favor of the claimant, will hold it against a patent issued upon the final decree.

*Error to Audrain Circuit Court.*

*Frémon* and *Reber*, for plaintiff in error.

1. The title of Soulard, under whom plaintiff claims, before the decree of confirmation, consisting of a concession and survey, was such a title as was protected by the treaty of cession and by the law of nations. This is well settled by judicial decisions, independent of congressional legislation. *Delassus* v. *United States*, 9 Peters, 117. *Chouteau's heirs* v. *same*, ib. 137. *Soulard's heirs* v. *same*, 10 ib. 105. It could be sold under execution. *Landes* v. *Perkins*, 12 Mo. 259.

2. It may be conceded that, prior to the passage of the act of 1824, Soulard's claim was barred, by the act of 1807. But this bar, which has been considered as sustainable only as a statute of limitations, did not destroy the equity of the claim, and as soon as the bar was removed by the act of 1824, his title was restored to its standing as property protected by the treaty.

3. From the first and second sections of the act of 1824, it will be seen that the intent of the law was to bring all parties interested in the land before the court, and, by a final decree, settle the title between them; and, if it were found that the title of the petitioner was protected by the treaty, and otherwise valid, to decree a confirmation of it. The proceedings under the act were adversary, bringing all parties interested before the court, and giving them power to contest the petitioner's claim. In this respect, it differed from the proceedings under the supplemental act of May 24, 1828, which the court, in *Barry* v. *Gamble*, 3 Howard, says were *ex parte*, on which fact the court seems to lay some stress.

4. The decree of the Supreme Court, declaring Soulard's title to be valid under the treaty, the law of nations, &c., and confirming it, had the effect to give it the standing and character of a legal title from the date of the passage of the act of 1824, or, at least, from the date of filing the petition for confirmation. This is the clear intent of the act, and the legal effect of the decree is, to accomplish and perfect that intent. In construing statutes, when the intention of the legislature is ascertained, the courts are bound to give it effect, whatever may be their opinion of its wisdom or policy. *Dwarris on Statutes*, 7 Law Library, page 40 and following. The confirmation is more than a mere grant; it is a confirmation in the strict sense of the term, and invested the petitioner, from the time he asserted his claim under the law, with the legal title which the government acknowledged itself to have held in trust for him. It, therefore, binds, and is conclusive on the government and on all persons claiming under it, by title origi-

nating subsequent to the institution of the proceedings by Soulard.

5. The intention of the act of congress was to invest the claimant with the legal title to lands, to which he confessedly had an equitable title ; and by necessary implication and intendment, the land was reserved from sale or other disposition, until the claimant's title was definitively disposed of. Indeed, this is enacted, not in terms, but in effect, by the fifth section, which declares that claims not prosecuted under this act within two years, shall be forever barred ; and the seventh section, which enacts, that claims, barred by the fifth section, shall be taken to be public land, and subject to sale accordingly. It is no answer to this construction of sections five and seven to say that they refer to claims, notice of which had been filed under the act of 1805, and other subsequent acts, because these sections intended to furnish a rule for the government of *all* claims coming within the scope of the act, and not merely for a part of them.

The theory of the act is, that claims coming within its purview are reserved from sale by it. Some of its provisions will have to be rejected as meaningless, unless that theory is sustained, and the benefit intended by the law cannot be realized, unless that construction is adopted. A thing within the intention of the makers of a statute, is as much within the statute as if it were in the letter. Dwarris, same vol. p. 41.

6. Section eleven of the act was only intended to protect purchasers and others, claiming under the government by a title issued prior to the filing of the petition by the claimant.

7. The section in the act of May 24, 1828, supplemental to the act of 1824, U. S. Statutes at large, vol. 4, p. 298, which dispenses with making adverse claimants parties, and enacts that confirmations under the act should be taken to be only a quit claim on the part of the United States, strengthens our construction of the act of 1824.

*Broadhead*, for same.

1. The act of May 26th, 1824, operated to reserve from

sale the land included within the limits of the claim of Antoine Soulard, from the time of the filing of the petition for confirmation, and all sales made by the government thereafter are void. If this were not manifest from the first section, the seventh section · shows, conclusively, the intention to reserve the lands from sale, during the process of adjudication. The act of 1824 being repugnant to the act of 1807, and referring to the same subject matter, operates to repeal it. The case of *Barry* v. *Gamble*, 3 Howard, 55, expressly decides that the act of 1824 removed the bar created by the act of 1807, in case of a failure of the claimant to file a notice of his claim prior to July 1st, 1808.

2. The proceeding under the act of 1824, was a judicial and not a political one. The claimant was not dealing with the government in its political and sovereign capacity, but prosecuting his claim against the government as a party defendant, and is entitled to the protection of all the rules and principles which govern the rights of parties litigant. The maxim, *pendente lite nihil innovetur*, therefore applies.

3. The equitable title of the claimant being recognized by the act of 1824, the confirmation by the Supreme Court, vesting in him the legal title, relates back to the time of filing the petition, and cuts out all titles originating afterwards.

*Bogy*, for same, also filed a brief.

*Anderson*, for defendant in error.

Soulard's claim not having been filed with the recorder of land titles in St. Louis, prior to July 1st, 1808, the same was subject to sale as other public lands.

The act of congress of May 26th, 1824, under which Soulard's claim was confirmed, did not reserve from sale the land covered by said claim ; and the entry of the defendant having been made according to law, and prior to the plaintiff's confirmation, the defendant has the better title.

The act of May 26th, 1824, was no recognition, on the part of the United States, of title, either inchoate or perfect in said Soulard ; nor did the institution of a suit under said act, ope-

rate to prevent the United States from selling, previous to the confirmation.

The seventh section of the act of 1824, relied on by the plaintiff in error, was only intended to operate on that class of claims, notice of which had, in due time, according to law, been filed with the recorder of land titles, and which were reserved from sale by the acts of March 3d, 1811, and February 17th, 1818.

The eleventh section of the act expressly declares that no claimant under the act shall have any lands decreed to him that have been sold by the United States.

The principle, *pendente lite*, &c., does not apply.

SCOTT, Judge, delivered the opinion of the court.

This was an action of ejectment, begun in the Pike Circuit Court, which, by a change of venue, was taken to Audrain county, where, on a trial, the plaintiff submitted to a nonsuit, and after an unsuccessful application to set it aside, brought his cause, by appeal, to this court.

The plaintiff's title rested on a concession by the Spanish government in 1796, which was confirmed by a decree of the Supreme Court of the United States, on the 21st January, 1836, on an appeal from the District Court of Missouri, which exercised jurisdiction of the subject matter, under the provisions of the act of congress of May 26th, 1824, entitled "an act enabling the claimants to lands within the limits of the State of Missouri and Territory of Arkansas, to institute proceedings to try the validity of their claims." The petition was filed by the claimant, Antoine Soulard, on the 22d August, 1824. In January, 1825, an amended petition was filed by Antoine Soulard, who afterwards died, and on the fourth Monday of March following, the proceedings were revived in the name of the widow and heirs of said Soulard, and such proceedings were had, that a decree was rendered against the petitioners by the District Court, on the fourth Monday of December, 1825, from which an appeal to the Supreme Court of the United States was taken within one year from its rendition,

where, on the 21st January, 1836, the decree of the District Court was reversed and the claim of the petitioners was confirmed, for all the land claimed, except that which had been sold by the United States before the filing of the petition in the case. In pursuance to this decree, the land claimed and confirmed was surveyed, and the survey returned to the commissioner of the general land office, on which, on the 22d December, 1845, a patent was issued to the petitioners, under whom the plaintiff claims. The land sued for is comprehended within the limits of the survey, and in the patent to Soulard's widow and heirs. No notice in writing, stating the nature and extent of his claim, was ever delivered by Soulard to the recorder of land titles, under any of the acts of congress in relation to that subject. The defendant was in possession of the premises in controversy, and their yearly value was estimated at eighteen dollars.

The defendant's title rested on patents from the United States, in the year 1836. These patents were based upon entries made in the year 1834, after the filing of Soulard's petition in the District Court, in August, 1824, and before the final decree of the Supreme Court of the United States, in January, 1836.

The court refused the following instructions asked by the plaintiff:

1. That the deed of confirmation, made by the Supreme Court of the United States, on the 21st day of January, 1836, to Julie Soulard, widow, and James G. Soulard and others, heirs of Antoine Soulard, deceased, relates back to the time of filing the petition for confirmation, and passes to the confirmees the title to the land thereby confirmed, so as to cut out all titles and claims thereto, originating after the filing of said petition.

2. If the jury believe from the evidence, that the land sued for was patented by the United States, on the 22d day of December, 1845, to the widow and heirs of Antoine Soulard,

deceased; that such patent was issued for land surveyed for said patentees, in pursuance of a decree of confirmation, made by the Supreme Court of the United States, and that such decree of confirmation was founded on a petition for confirmation, filed in the United States Court for the district of Missouri, on the 22d day of August, 1824, such patent conveyed to the patentees a better title to the land sued for than that derived from an entry of the same, made after the said 22d of August, 1824, or from a patent issued on such entry.

3. If the jury believe from the evidence, that Antoine Soulard, on the 22d day of August, 1824, petitioned the District Court of the state of Missouri for the confirmation of his title to a claim for 10,000 arpens of land; that said Antoine Soulard died, and the suit was revived and prosecuted in the name of his widow and children; that said District Court decreed against the said claim; that said suit was appealed to the Supreme Court of the United States within one year from the time of the rendition of said decree, by the District Court; that said Supreme Court afterwards decided in favor of the said claim, and, by a decree, confirmed the same to said widow and heirs; that the surveyor of public lands for the state of Missouri, caused the land specified in said decree to be surveyed for said confirmees — if the jury find these facts to be true, then the said widow and heirs of Antoine Soulard had, by virtue thereof, a better title to the land included in such survey, than the defendant can have to any part of it, by virtue of an entry made after the said 22d of August, 1824, or by virtue of a patent issued on said entry.

4. The title under the confirmation of the Supreme Court of the United States to the representatives of Antoine Soulard, is a better title than that of the defendant.

5. The act of May 26th, 1824, passed by the congress of the United States, reserved from sale the lands included within the bounds of all claims of the character embraced within the provisions of the first section of that act, from the time of the

filing of the petition for confirmation of such claims, in the District Court of Missouri, until such time as said claims should be finally decreed against the claimants.

6. Any entry of lands made within the limits of any claim of the character embraced within the provisions of the first section of the act of May 26th, 1824, after the filing of the petition of the claimant in the District Court, as provided for by said act, and before said claim shall be finally decided against the claimant, is a void entry, and the patent issued thereon is a void patent.

And gave the following instructions asked by the defendant :

1. If notice of the Soulard claim was not filed with the recorder of land titles in St. Louis, prior to the 1st day of July, 1808, then said claim was not by law reserved from sale, and if not reserved from sale by law, was subject to sale as other public lands.

2. If Soulard's claim was not reserved from sale, then the entry of the defendant, if made according to law, being older, is a better title than the plaintiff's confirmation.

3. The patent of the defendant is *prima facie* evidence that his entry was regular and lawful.

4. The act of congress of 26th May, 1824, under which Soulard's claim was confirmed, did not reserve from sale the land covered by said claim, and any sale of such land, regularly made prior to the confirmation, conveys to the purchaser a better title than said confirmation, such claim not having been filed with the recorder prior to July 1st, 1808.

5. The commencement of a suit by Soulard, in the United States Court, for the purpose of obtaining a confirmation of his claim, did not operate as notice of his claim, so as to affect a title otherwise regularly obtained from the United States ; and sales of such land made after the commencement of his suit stand upon the same ground as if made before such suit was commenced.

1. In determining this cause, we have given full consideration to the well established principle, and one which is found-

ed on indispensable necessity, that the purchase of the subject matter in controversy, *pendente lite*, does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation. Nor have we forgotten, that it was a maxium of the common law that, *pendente lite nihil innovetur.* It seems to us, that the question involved in this controversy steers clear of the principle stated, and its solution is to be found in the proper construction of the various acts of congress in relation to the subject.

We are not aware that this question has ever been determined by the courts of the United States, though intimations may be found in some of the reports, that, as between the federal government and the claimants under the act of 26th May, 1824, the confirmation would relate back to the filing of the petition, and give title to the lands described in it. We acknowledge the justice and propriety of this rule, when applied to the United States, but cannot recognize its justice when sought to be extended to innocent purchasers.

The act of congress of the 26th May, 1824, authorized the institution of proceedings to try the validity, as well of those claims of which notice had been delivered to the recorder, as those of which no notice had been given. The claim of Soulard was of this latter class. In pursuance to the acts of congress of March 3d, 1811, section 6, and of the 17th February, 1818, and the treasury order of Mr. Crawford, of the 10th June, 1818, lands of the class first above mentioned were reserved from sale until the final decision of congress thereon. Those of the latter class, by the act of 3d March, 1807, section 5, in consequence of no notice of them having been delivered to the recorder of land titles, prior to the 1st July, 1808, so far as they were derived from or founded on any act of congress, were barred and void from and after that period. The act of the 24th May, 1828, amendatory of the act of 26th May, 1824, declares that the confirmation had, by virtue of said act and the patents issued thereon, shall operate only as a relinquishment of title on the part of the United States, and

shall in no wise affect the right or title, either in law or equity, of adverse claimants of the same land.

The authority of congress to enact the law of the 3d March, 1807, making all claims void of which notice should not be delivered prior to the 1st July, 1808, has never been successfully controverted. The propriety and policy of such laws are obvious. The claim, then, of Soulard, at the date of the act of 1824, had no legal existence. It was as though it had no being. The United States were under no obligation, moral or political, to make any provision for its recognition or confirmation. It was forfeited by reason of its owner failing to give notice of it, within the time prescribed by law. That act conferred a gratuity, and the claimants under it, especially those in the class of Soulard, stood upon the same ground occupied by any other applicant for the bounty or favor of congress. The land he claimed was, in every sense of the word, public land, liable to sale and entry as other public lands. So sensible was the party of this, that, in his petition to the District Court, he did not pretend to claim that portion of his land which had been entered prior to the act of 1824. He expressly excepted it. The act of 26th May, 1824, establishing the land office at Palmyra, within which district the land in controversy was situated, expressly subjected all public lands to sale within the limits of the district thereby created. If an application is made to the bounty of the government, desiring a tract of land, and before the application is granted, the government sells the tract solicited, for a valuable consideration, to a purchaser, without any other notice than is implied from the fact that an application for the same land has been made at a great distance from the place of sale, on what principle can the recipient of the bounty claim the land of the purchaser, when, by the terms of the gift, he is told that if the land granted has been sold, he shall take lands elsewhere ? 11th sec. act 1824. Can it make any difference that the grant is made in the form of a judicial proceeding ? Is it not an

obvious perversion, to apply to such a procedure the maxim, *pendente lite nihil innovetur ?*

The seventh section of the act of May 26th, 1824, enacts that any claim tried under the provisions of this act, which shall be finally decided against the claimant, and that if any claim cognizable under the act shall be barred by virtue of any of the provisions therein contained, the land specified in such claim shall forthwith be held and taken as a part of the public lands of the United States, subject to the same disposition as any other public land, in the same district. This section is supposed to contain an implied reservation of all lands included in any petition filed under the provisions of the act. When it is recollected, that there were two classes of claims embraced by the act, one of which had been reserved from sale for a great number of years, and another which had been regarded as public lands, subject to sale for nearly fifteen years, there can be no ground for this supposition. This section, we conceive, applies to those lands which had been reserved from sale. There was no necessity for a provision for the sale of those lands, of the claims to which, no notice had been given. They had never been reserved by any law or regulation of any of the departments, while those, of which notice had been given, had been reserved from the year 1811. On the expiration of the act of 1824, which was a temporary one, lands of the class in which this was included would have been subject to sale without this provision, as they had been regarded and treated as public lands for a number of years, on which no reservation whatever existed.

When the nature of the plaintiff's claim is considered, regarding his confirmation as a mere gratuity, as it is, there is no reason nor justice for making the words "shall have been sold by the United States, or otherwise disposed of," in the 11th section of the act of 1824, relate to the filing of the petition of the claimant, rather than to the date of the confirmation of the claim. Indeed, the language of the section would seem to

convey this idea : The words are, " that if, in any case, it should so happen, that the lands, tenements or hereditaments, *decreed* to any claimant, under the provisions of this act, shall have been sold by the United States, or otherwise disposed of, it shall and may be lawful for the party interested to enter the like quantity of land." The act does not say, that if any *claim*, under the provisions of the act, shall have been disposed of, but if any land *decreed* shall have been sold, showing that the sale referred to the time of the decree, and not to the time of filing the petition.

Judge Ryland concurring, the judgment of the court below will be affirmed.